## In re SUGAR ANTITRUST LITIGATION, MDL 201.

### The STATE OF CALIFORNIA etc., Plaintiffs-Appellants,

v.

### CALIFORNIA AND HAWAIIAN SUGAR CO. et al., Defendants-Appellees.

### Madelyne BRINKER, on her own behalf and that of all others similarly situated, Plaintiff-Appellant,

v.

### AMALGAMATED SUGAR CO. et al., Defendants-Appellees.

### Nos. 76–2937, 76–3001.

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1978.

As Modified on Denial of Rehearing and Rehearing En Banc Jan. 29, 1979.

Ronald Lovitt (argued), Lovitt & Hannan, Inc., San Francisco, Cal., for plaintiffs-appellants.

John E. Sparks (argued), San Francisco, Cal., for defendants-appellees.

Before MERRILL and SNEED, Circuit Judges, and LINDBERG,* District Judge.

MERRILL, Circuit Judge:

These two actions were commenced in the superior court for San Francisco, California,

---

\* Honorable William J. Lindberg, Senior United States District Judge for the Western District of Washington, sitting by designation.

and were removed by the defendants (here appellees) to the United States District Court for the Northern District of California. There they joined a massive multidistrict treble damage antitrust litigation involving several hundred plaintiffs and fourteen defendants in about a hundred consolidated cases. Appellees removed the state court actions pursuant to 28 U.S.C. § 1446 with jurisdiction for removal asserted under 28 U.S.C. § 1441(b).[1] Plaintiffs (here appellants) promptly moved for orders remanding the actions to the California courts, contending that removal jurisdiction did not exist. The district court denied the motions; the issue of jurisdiction was certified for appeal under 28 U.S.C. § 1292(b) and leave to appeal the interlocutory orders was granted by this court. The principal question presented is whether, under § 1441(b), the California actions were "founded on a claim or right arising under the * * * laws of the United States." We here hold that they were not.

The state court complaints in both actions charge that the appellees engaged in a combination and conspiracy to restrain trade by fixing and raising the price of refined sugar and fixing prepaid freight applications. Both complaints specify that the restraints were in violation of § 16720 of the California Business and Professions Code, commonly known as the California Cartwright Act, and that a right of action is conferred by § 16750 of that code.[2] Pursuant to California Code of Civil Procedure § 382 both appellants sought to represent a class of persons similarly situated. Brinker defined the class as follows:

"The Class consists of all private individuals who, during the relevant time period, have purchased refined sugar at retail in its original bulk-package forms within the State of California through retail outlets that sell refined sugar supplied by one or more of the Defendants in its original bulk-package form for consumption off the premises * * * ."

The state, in seeking representation, defined the class as follows:

" * * * California citizens and residents who have purchased refined sugar at retail for use or consumption during the period of the alleged conspiracy."

Prior to filing its state court action, California had filed an action in the United States District Court for the Northern District of California asserting claims under the Sherman and Clayton Acts based upon alleged price fixing of sugar. That action was consolidated with the others before the district court below. In that action the state sought to represent the members of two classes: a public entity class and a consumer class. The district court in due course acted on the many applications for class certification presented by the consolidated cases. It declined to certify a consumer class and California's prayer in this respect was denied. While this federal action was commenced by California prior to its state court action, the latter was commenced before the district court's refusal to certify a consumer class.[3]

Appellants both contend that their claims alleging that state law was violated to their

---

**1.** 28 U.S.C. § 1441(b) reads as follows:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

**2.** California Business and Professions Code § 16750 reads as follows:

"(a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded a reasonable attorneys' fee together with the costs of the suit."

**3.** A brief chronology of the events above mentioned might be helpful.

July 7, 1975. California's federal action was commenced.

December 16, 1975. Brinker's state action was commenced.

February 4, 1976. California's state action was commenced.

injury arise under state law and not under federal law.

Appellees contend that the facts alleged in the state court complaints state claims under federal law as well as under state law and thus can be said to arise under federal law. They assert that a cause of action depends upon the facts alleged and not upon the legal labels attached to the facts; that the existence of a federal cause of action depends upon the pleaded facts and not upon a plaintiff's decision to give those facts a federal label. They emphasize that the charging allegations of both complaints are copied from criminal indictments filed against certain of the appellees by the United States, and that the commerce in which the restraints are alleged to have occurred is interstate. They suggest that there is something improper in California's seeking state court relief; that it is attempting to circumvent the district court's denial of consumer class certification. They assert that the district court acted properly in protecting its jurisdiction over the claims before it and over the classes certified and in avoiding the chaos that they feel would result from simultaneous prosecution of complex state and federal actions pursuing the same relief.

However appealing these contentions might be in other contexts,[4] they have no merit here. Here we are squarely faced with claims asserted under California antitrust law on facts which do not state a federal claim.[5]

■ The order of the district court denying consumer class certification in the con-

---

March 18, 1976. Removal petitions were filed in the state actions.

March 26 and 31, 1976. Motions to remand the state actions were filed in federal court.

May 20, 1976. The court order denying consumer class certification was entered.

July 23, 1976. The court order denying remand, from which these appeals are taken, was entered.

4. Even accepting these contentions, a serious problem is posed by *State of Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654 (9th Cir. 1972) (*Baseball*). There the same contentions were made as are made here—that the antitrust claims alleged arose under federal as well as under state law. This court pointed out that the jurisdiction of a federal court on removal is derivative; that under *Lambert Run Coal Co. v. B. & O. R.R. Co.* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922), if the state court lacks jurisdiction over the subject-matter of an action (for example, when a federal statute grants exclusive jurisdiction to the federal courts, as do the federal antitrust statutes), that lack is not cured by removal. The removed action must be dismissed by the federal court since it has acquired no jurisdiction from the state court. In *Baseball* we concluded that under *Lambert Run* the federal court was without jurisdiction to proceed on the federal antitrust claims but that the state claims remained for disposition. We directed that the case be remanded to the state court.

In our case the district court, in its opinion denying remand to the state courts, dealt at length with *Lambert Run* and *Baseball*, and distinguished them on the ground that here the cases are multidistrict and class action cases. It concluded that to apply *Lambert Run* and

*Baseball* in multidistrict class actions would be to defeat the purpose of Congress in enacting 28 U.S.C. § 1407 dealing with the consolidation of pretrial proceedings in multidistrict actions. It stated:

"Due to the widespread application of multidistrict litigation authorized by 28 U.S.C. § 1407 and the frequent certification of class action in such litigation, remands comparable to that sought in the *California* and *Brinker* cases will have highly adverse effects upon efficiency, expediting, avoiding duplication and control of time and expense incurred in discovery and almost every other phase of conducting multidistrict litigation."

We need not reach the question whether the procedure followed in *Baseball* should apply in multidistrict class action cases where both federal and state claims are intermingled or whether the distinction drawn by the district court should apply. As we discuss, *infra*, here there is no federal consumer class claim to be consolidated with the other multidistrict claims.

5. Appellees would have us "transform" the claims under the California statute into one stating a federal claim. They cite as authority for this transformation a series of removal cases in which complaints purporting to state claims under state law were found to state facts actually alleging claims under federal statutes which effectively pre-empted the state law. *See, e. g., Johnson v. England*, 356 F.2d 44 (9th Cir.), *cert. denied*, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966); *American Synthetic Rubber Corp. v. Louisville & N. R. Co.*, 422 F.2d 462 (6th Cir. 1970). That is not the situation facing us.

solidated federal litigation presaged the decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). There, in construing § 4 of the Clayton Act, 15 U.S.C. § 15, the Court held that with rare exception only direct purchasers could claim and recover for injury caused by price fixing and that the recovery should include the whole of the injury caused by overcharging, whether that injury was shared by indirect purchasers or not. Under this holding, a consumer class (not composed of direct purchasers) cannot claim under the Clayton Act that overcharges had been passed on to them by those selling to them.

It follows from *Illinois Brick* that the consumer class action claims of these plaintiffs, if construed by us as arising under federal law, would be dismissed in federal court. While the process of removal of state actions looks to trial of the removed cause in a more appropriate forum, here removal will assure that the cause will never be tried at all. It would be incongruous for us to construe these state law consumer class claims as arising under federal law when, under federal law as announced in

*Illinois Brick*, it would appear that they never arose at all. On the other hand, under California state law they may not be foreclosed.[6]

We make no pretense of forecasting state law in this area. We do say that however state law might be construed, the state should be free to settle the question. To deny remand under these extraordinary circumstances amounts to federal pre-emption of the antitrust laws by judicial act where it is conceded that there is no congressional pre-emption. Should such action become the general practice the state would be deprived of any power · to legislate other than in accordance with the Clayton Act as construed in *Illinois Brick*.

It may well be true that to have complex state and federal actions proceeding simultaneously against the same parties will pose grave problems in the management of litigation. Appellees urge as another ground for removal that we regard removal here as in the nature of a bill of peace, designed simply to put together in one forum all claims based upon the same cause of action, thus avoiding the harassment that otherwise they feel will surely result.[7]

**6.** While the Supreme Court's construction of § 4 of the Clayton Act undoubtedly will be given great deference by state courts in their construction of the state law counterpart (Cal. Bus. & Prof.Code § 16750, *supra* n. 2), still it cannot be said with assurance that state policy would not be held to call for a different construction. The state has recently enacted California Business and Professions Code § 16760, which provides in part:

"The Attorney General may bring a civil action in the name of the people of the State of California, as parens patriae on behalf of natural persons residing in the state, in the superior court of any county which has jurisdiction of a defendant, to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of this chapter. The court shall exclude from the amount of monetary relief awarded in such action any amount of monetary relief (A) which duplicates amounts which have been awarded for the same injury, or (B) which is properly allocable to * * * (ii) any business entity."

Here the state has given indication of greater concern for small claims than is afforded by class action provisions standing alone. It has

indicated a desire that such claimants should not have to rely on private representation; that the state as parens patriae should attend to their needs. It is not wholly irrational to suppose that the state had in mind the claims of ultimate consumers and that it would not approve of wiping out all such claims against the price fixer in favor of the claims of direct purchasers.

The Hart-Scott-Rodino Antitrust Improvement Act of 1976, 15 U.S.C. § 15c, *et seq.*, has made the same provision for parens patriae representation. As Mr. Justice Brennan notes in his dissent in *Illinois Brick*, "The Senate Report accompanying the new Act expressly found that '[t]he economic burden of most antitrust violations is borne by the consumer in the form of higher prices for goods and services.' S.Rep., No. 94–803 * * *." 431 U.S. at 756, 97 S.Ct. at 2080.

**7.** Even were we to favor the bill of peace analogy we doubt that removal would be an appropriate vehicle. Removal, as we have noted, contemplates federal trial. Where the purpose is not to bring the challenged action to trial but to stay it, in order to eliminate complicating and overlapping litigation, a forthright motion

But, as we have noted, that is not what will happen here. State and federal courts will not be adjudicating identical claims, since these plaintiffs, as consumers or representatives of consumers, have no federal claims whatsoever under *Illinois Brick.* They seek to advance their claims in a jurisdiction where they may yet receive recognition.

 We conclude that the claims of appellants in their complaints filed in the superior court for San Francisco, California, arise under state law and do not arise under federal law; and that the district court has no jurisdiction to entertain removal of the actions from state court.

The order. denying remand is vacated. The cases are remanded to the district court with instructions that the motions of appellants for orders remanding the actions to state court be granted.

to enjoin state action would focus on the true problem more accurately and would more di-

rectly present the values that are competing for accommodation.