**ALTON BOX BOARD COMPANY, et al., Plaintiffs-Appellants,**

v.

**ESPRIT DE CORP., Defendant-Appellee.**

No. 80–4338.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1981.

Decided April 23, 1982.

R. Clifford Potter, Bell, Boyd, Lloyd, Chicago, Ill., for plaintiffs-appellants.

Francis O. Scarpulla, Scarpulla & Garlock, San Francisco, Cal., for defendant-appellee.

Before CHOY and WALLACE, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

WALLACE, Circuit Judge:

Plaintiffs-appellants Alton Box Board Co. and twenty-eight other manufacturers of corrugated containers (the manufacturers) appeal from the district court's grant of summary judgment for appellee Esprit de Corp. (Esprit). The primary question presented is whether the district court improperly refused to enjoin a state court action arising under state antitrust law, when another antitrust claim, challenging the same conduct but arising under federal antitrust law, is being prosecuted by different plaintiffs against the same manufacturers in a multidistrict action in federal court. A declaratory judgment claim based upon the same contentions was also dismissed. We affirm.

I

Esprit is an indirect purchaser of corrugated containers. Prior to the filing of the manufacturers' complaint in this case, a multidistrict class action "of nearly unprecedented scope" was pending in the United States District Court for the Southern District of Texas against the manufacturers. *In re Corrugated Container Antitrust Litigation*, 611 F.2d 86, 89 (5th Cir. 1980); *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244 (S.D.Tex.1978). The plaintiffs in that multidistrict action sought treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, for an alleged horizontal price fixing conspiracy by the twenty-nine manufacturers of corrugated containers,[1] in violation of section 1 of the Sherman Act, 15 U.S.C. § 1.

Esprit purchased its corrugated containers solely from distributors; none of these purchases were made directly from any of the manufacturer-defendants in the multidistrict litigation. Foreclosed from joining the plaintiff class in the multidistrict litigation by the "direct purchaser" requirement of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (*Illinois Brick*), Esprit filed a state antitrust action under California's Cartwright Act, Cal.Bus. & Prof.Code §§ 16720, 16750 (West 1964 & Supp.1981), against the manufacturers and certain unnamed co-conspirators. This action was brought on behalf of a purported class of indirect purchasers of corrugated containers and was filed on March 22, 1979, more than six months after certification of a nationwide plaintiff class of direct purchasers in the federal multidistrict litigation. The manufacturers joined as defendants in Esprit's state complaint are also defendants in the multidistrict action and plaintiffs-appellants in this case.[2] The essence of Esprit's state suit is that some or all of the overcharges allegedly paid by members of the plaintiff class in the multidistrict litigation were passed on to the injury of Esprit and other indirect purchasers. The Cartwright Act specifically allows an antitrust action to be brought on behalf of indirect purchasers. *Id.* § 16750(a).

On May 2, 1979, the manufacturers filed a complaint in the District Court for the Northern District of California seeking an injunction precluding Esprit from pursuing

---

**1.** The federal multidistrict litigation was brought against 37 defendant-manufacturers, eight of whom are not plaintiffs-appellants in this case. On January 25 and April 23, 1980, final judgment was entered in the federal multidistrict action dismissing with prejudice all claims against 23 of the defendant-manufacturers pursuant to settlements reached between them and the plaintiff class. The multidistrict litigation court dismissed all class members' claims

arising under the antitrust laws of the United States or of any state or other jurisdiction, or any similar statutory or common law, which have been, might have been, are now or could be asserted in these actions in connection with corrugated containers and corrugat-

ed sheets or which relate to or arise out of the unlawful conspiracy to fix, raise, maintain or stabilize the prices of corrugated containers or corrugated sheets alleged in the United and Consolidated Complaint as amended, on file herein.

Final judgment has subsequently been entered pursuant to settlements reached with all the remaining defendant-manufacturers except appellant Mead Corp. *See In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1328 n.3 (5th Cir. 1981).

**2.** Corco, Inc., Hoerner Waldorf Corp. and Interstate Container Corp., which were named as defendants in Esprit's state complaint, are not plaintiffs-appellants in this case.

its Cartwright Act claims in the state courts and a declaratory judgment that the Supreme Court's decision in *Illinois Brick* preempted such an "indirect purchaser" antitrust action. The next day, the manufacturers filed a petition for the removal of Esprit's state suit against them to the district court pursuant to 28 U.S.C. § 1441(b),[3] alleging that the parallel nature of the violations alleged by Esprit and the plaintiff class in the federal multidistrict litigation, together with the equivalence of the facts in dispute in both cases, provided adequate grounds for retention of jurisdiction by the district court and for eventual transfer of the action to the district court assigned the multidistrict litigation. On May 4, 1979, Esprit moved to remand its Cartwright Act case to the state court.[4] Over a year later, the district court granted the motion for remand.[5] The manufacturers moved for an injunction and for summary judgment on their federal claims. Esprit filed a cross-motion for summary judgment. The district court denied the manufacturers' motion and ordered the complaint dismissed on May 29, 1980. The next day the court

entered summary judgment for Esprit. The manufacturers filed a timely notice of appeal from this final judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We do not reach the merits of this dispute. For reasons we will explain in detail, the Anti-Injunction Act, 28 U.S.C. § 2283,[6] precludes the injunctive relief the manufacturers seek. Declaratory relief is unavailable because the district court lacked an independent basis of jurisdiction to rule on the preemption issue, which is a defense arising under federal law that can and should be asserted in the state courts. If their preemption defense is not recognized by the state courts, the manufacturers can obtain federal review by appealing to the Supreme Court pursuant to 28 U.S.C. § 1257(2).

### A.

■ The Anti-Injunction Act precludes federal courts from enjoining state court actions unless (1) Congress has expressly

**3.** 28 U.S.C. § 1441(b) provides:
Any civil action of which the district courts have original jurisdiction founded on a claim of right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**4.** The removed state case and the manufacturers' federal action for injunctive and declaratory relief were consolidated before the district court. Following a status conference held on May 23, 1979, the district court refused to schedule a hearing on Esprit's motion for remand of its state case. The district court later stayed all proceedings in both cases pending transfer by the Judicial Panel on Multidistrict Litigation. Esprit petitioned this court for a writ of mandamus to compel the district court to remand, asserting that our decision in *In re Sugar Antitrust Litigation*, 588 F.2d 1270 (9th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979), required the district court to conclude that there is no federal jurisdiction over antitrust actions brought by indirect purchasers pursuant to the Cartwright Act. A motions panel of this court denied the petition without prejudice on September 7,

1979. A motions panel denied a later petition for a writ of mandamus on February 29, 1980, also without prejudice.

**5.** On June 10, 1980, the manufacturers moved the district court for an order staying effectuation of its order of remand. This motion was denied on July 11, 1980.

On November 17, 1980, a motions panel of this court dismissed the manufacturers' appeal from the district court's order of remand because appeal of such an order is precluded by 28 U.S.C. § 1447(d). We are not foreclosed by this action from examining the jurisdictional issues raised in this appeal from the district court's entry of summary judgment for Esprit on the manufacturers' federal complaint. *See Rath Packing Co. v. Becker*, 530 F.2d 1295, 1303 n.10 (9th Cir. 1975), *aff'd sub nom., Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

**6.** 28 U.S.C. § 2283 provides:
A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

authorized such relief by statute, (2) an injunction is "necessary in aid of [the court's] jurisdiction," or (3) an injunction is necessary "to protect or effectuate [the court's] judgments." 28 U.S.C. § 2283. In the interest of comity and federalism, these three exceptions must be strictly construed. " [D]oubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.' " *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality opinion), *quoting Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). The exceptions to the Act "should not be enlarged by loose statutory construction." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, supra*, 398 U.S. at 287, 90 S.Ct. at 1743. In short, a federal injunction restraining prosecution of a lawsuit in state court is absolutely prohibited unless authorized by one of the three narrow statutory exceptions specifically defined in the Anti-Injunction Act. *Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 2154, 32 L.Ed.2d 705 (1972). It makes no difference whether the injunction applies to the private litigants or is imposed directly on the state court itself. *See, e.g., Henry v. First Nat'l Bank of Clarksdale*, 595 F.2d 291, 300 (5th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4222, at 317 (1978).

■ The district court held that injunctive relief was "unequivocally" barred by the Act because the manufacturers' action fell within none of the Act's exceptions. We agree. The first exception does not apply because there clearly has been no statutory authorization by Congress for the relief sought by the manufacturers. Nor does the second exception apply: an injunction is not necessary to aid the district court's jurisdiction. The manufacturers insist that an injunction is necessary to prevent "[t]he devastating effect that a state court proceeding would have on the ongoing multidistrict litigation." However, their own argument demonstrates conclusively that an injunction would not at all aid the jurisdiction of the district court in which injunctive relief was requested, the District Court for the Northern District of California. The "jurisdiction" the manufacturers wish to preserve is that of the District Court for the Southern District of Texas, which is presiding over the multidistrict direct purchasers' class action.

The authorities cited by the manufacturers do not conflict with this conclusion, but rather support it. The multidistrict litigation court enjoined a state case brought by a direct purchaser member of the plaintiff class in order to protect *its own* jurisdiction over the case. *See In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334–35 (5th Cir. 1981). Unlike the plaintiffs in *Three J Farms, Inc. v. Alton Box Board Co.*, 1979–1 Trade Cas. ¶ 62,423 at 76,549 (D.S.C.1978), *vacated on other grounds*, 609 F.2d 112 (4th Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980), Esprit is not a direct purchaser, has never been and cannot be a member of the federal class, and has never been subject to the jurisdiction of the multidistrict litigation court. *See In re Corrugated Container Antitrust Litigation, supra*, 659 F.2d at 1336 (multidistrict litigation court's injunction would not bar indirect purchaser suit brought under state antitrust law). Therefore, the district court correctly concluded that an injunction was not "necessary in aid of its jurisdiction." [7]

7. The manufacturers argue that the Anti-Injunction Act has not been construed to ban "bills in peace" of complex multi-party litigation having the exceptional proportions of the Corrugated Container Antitrust Litigation. As the district court concluded, however, this is not a situation involving a multiplicity of actions; the claims asserted in the state courts and the multidistrict litigation court are on behalf of markedly different classes of plaintiffs and do not share common questions of law since they arise under separate state and federal statutes. *Compare Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884 (9th Cir. 1953), *with*

▮ The manufacturers argue creatively that an injunction is necessary to aid the district court's jurisdiction because Esprit's state Cartwright Act class action involves a claim to the same "common fund—the amount of the alleged overcharge," *Illinois Brick, supra*, 431 U.S. at 737, 97 S.Ct. at 2070, over which the multidistrict litigation court is charged with determining the rights and liabilities of the parties thereto. This argument is persuasive. It highlights the risk that Esprit's state suit may result in the "duplicative recoveries" condemned by the Supreme Court. *Id.* at 730–31 & 731 n.11, 97 S.Ct. at 2067 n.11. Its defect is that it runs to the merits. With respect to the issue of whether the district court had jurisdiction under the Anti-Injunction Act, it is not on point.

▮ The Act's second exception arose from the settled rule that if an action is *in rem*, the court first obtaining jurisdiction over the *res* may proceed without interference from actions in other courts involving the same *res. Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 134–36, 62 S.Ct. 139, 144, 86 L.Ed. 100 (1941). *See Mitchum v. Foster, supra*, 407 U.S. at 235, 92 S.Ct. at 2158. Even if the "fund" of overcharges may be considered sufficiently analogous to a *res* to invoke this rule, however, the plea of the manufacturers is to the wrong court. The court with jurisdiction over the *res* is the multidistrict litigation court. Thus,

while it is true that "[f]ederal courts possess the power to protect . . . their jurisdiction," as the manufacturers insist, it is the jurisdiction of the multidistrict litigation court, if any, which needs to be protected. Having been instructed that the exceptions to the Anti-Injunction Act should be narrowly construed, we refuse to construe the Act to allow one federal district court to enjoin a pending state lawsuit "in aid of" the jurisdiction of another federal district court.

▮ Moreover, the analogy to the *in rem* cases is strained.[8] This is not an interpleader action in which different parties are making a claim to the same property, nor is it a situation in which the federal court's judgments will affect the interests of all persons, whether or not parties, to a specific asset. Rather, this case falls within the general rule that an injunction cannot issue to restrain a state court action *in personam* involving the same subject matter at issue before the federal court. *See* 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, *supra*, § 4225, at 335. *See also Rath Packing Co. v. Becker*, 530 F.2d 1295, 1306 n.15 (9th Cir. 1975) (*citing Kline v. Burke Construction Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922)), *aff'd sub nom., Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). The Supreme Court has emphasized that such actions may proceed concurrently

*In re Sugar Antitrust Litigation*, 588 F.2d 1270, 1273 -74 & 1273 n.7 (9th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979).

Our dictum in footnote 7 in *Sugar Antitrust*, which states that "a forthright motion to enjoin state action would focus on the true problem more accurately and would more directly present the values that are competing for accommodation," does not foreclose our decision in this case. First, in *Sugar Antitrust* we were not presented with an Anti-Injunction Act issue. Second, the district court in that case was already overseeing a multidistrict direct purchaser action, while the district court in this case clearly was not. In addition, we do not believe that our *Sugar Antitrust* dictum concerning *Illinois Brick* "preemption," 588 F.2d at 1273, forecloses the argument that the manufacturers make on the merits in this case. In *Sugar Antitrust* we expressly observed that it had been "conceded that there is no congres-

sional pre-emption." *Id.* Far from conceding the issue here, the manufacturers argue that *Illinois Brick* preempts recovery by indirect purchasers under state antitrust law.

8. There have been some cases in which courts have applied the second exception to situations that do not present classic *in rem* disputes. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 501 F.2d 383 (4th Cir. 1974) (school desegregation). These cases appear justifiable because they are sufficiently analogous to *in rem* situations to permit application of the second exception. *See* 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4225, at 335 & n.8 (1978). They do not conflict with our decision in this case because, even assuming that the "fund" of overcharges is a *res* before a federal court, it is not before the district court in which the manufacturers brought their action for an injunction.

in federal and state courts without interference from either judicial system. The Anti-Injunction Act was not intended to alter this essential balance between the state and federal courts in our federal system. "We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court ...." *Vendo Co. v. Lektro-Vend Corp., supra*, 433 U.S. at 642, 97 S.Ct. at 2893. As in *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, supra*:

> [T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts.... Therefore the state court's assumption of jurisdiction over the state law claims and the federal preclusion issue did not hinder the federal court's jurisdiction so as to make an injunction *necessary* to aid that jurisdiction.

398 U.S. at 295–96, 90 S.Ct. at 1747 (emphasis in original, citations omitted). The possibility that Esprit's state claim may be preempted by federal law is not sufficient of itself to invoke the second exception of the Act. *Id.* at 294, 90 S.Ct. at 1746; *cf. Amalgamated Clothing Workers of America v. Richman Bros.*, 348 U.S. 511, 515–16, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955) (Act's prohibition of injunctions cannot be inapplicable merely because state suit involves area preempted by federal law).

These same considerations establish that an injunction is not necessary under the third exception: to "protect or effectuate" the judgment entered by the multidistrict litigation court.[9] Notwithstanding language in that court's order dismissing all claims "arising under the antitrust laws of the United States *or of any state*" (emphasis added), it is clear that the court dismissed only the claims of the class plaintiffs—the direct purchasers. Esprit cannot be a class member in that action since it is an indirect purchaser; therefore, Esprit's state Cartwright Act suit does not interfere with the judgment entered by the multidistrict litigation court. Further, as we decided with respect to the second exception, the district court in this case is not authorized by the third exception to enjoin Esprit's state action in order to protect the judgment of the multidistrict litigation court. As we pointed out earlier, the Act's language allows a federal court to issue an injunction only if "necessary in aid of *its* jurisdiction, or to protect or effectuate *its* judgments," 28 U.S.C. § 2283 (emphasis added), and thus it would impermissibly enlarge the exceptions "by loose statutory construction," *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, supra*, 398 U.S. at 287, 90 S.Ct. at 1743, to allow one federal court to issue an injunction in order to aid the jurisdiction or protect the judgment of another federal district court. If an injunction is necessary to protect the judgment of the multidistrict litigation court, it must issue from that court.[10]

**B.**

The district court concluded that declaratory relief was not appropriate because any

---

**9.** *See* Note 1, *supra*.

**10.** Following the district court's grant of summary judgment for Esprit, Mead Corp., one of the manufacturers, filed a complaint in the multidistrict litigation court, nearly identical to the complaint filed in this case, seeking an injunction restraining Esprit from prosecuting its Cartwright Act suit in the state courts. *The Mead Corp. v. Esprit de Corp.*, Civ. No. H–81–2213 (S.D.Tex., filed August 31, 1981). On November 3, 1981, Esprit moved this court and the District Court for the Northern District of California for an order enjoining Mead Corp. from prosecuting its lawsuit in the multidistrict court, asserting that relief was barred on the ground of *res judicata* by the judgment of the district court in favor of Esprit. The district court denied Esprit's motion for an injunction on November 5, 1981, concluding that, assuming it had jurisdiction notwithstanding the filing of a notice of appeal, Esprit had shown no irreparable injury because its *res judicata* defense could be asserted in the multidistrict litigation court. Agreeing with the district court, we denied Esprit's similar motion on November 16, 1981. Nine days later, the multidistrict litigation court entered an order denying Mead Corp.'s motion to enjoin Esprit's state lawsuit. That order is now on appeal to the Fifth Circuit. *The Mead Corp. v. Esprit de Corp.*, appeal docketed, No. 81–2508 (5th Cir.).

"defenses" arising under *Illinois Brick* "must be raised in the court wherein the actions are pending—they are not properly converted from a shield into a sword by which to obtain ... declaratory relief in [federal] court." We agree. The district court lacked jurisdiction to enter a declaratory judgment because the manufacturers' declaratory judgment complaint raised no federal question.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural device only; it does not confer an independent basis of jurisdiction on the federal court. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950); *Luttrell v. United States*, 644 F.2d 1274, 1275 (9th Cir. 1980). In this case it is conceded that diversity of citizenship was absent. Therefore, the district court had jurisdiction to enter a declaratory judgment only if the manufacturers' complaint raised an issue arising under the federal statutes or the Constitution. 28 U.S.C. § 1331.

■ The federal preemption issue raised in the manufacturers' complaint is a defense to enforcement of Esprit's Cartwright Act claim, a claim which manifestly arises under state law. Such is not the stuff of federal jurisdiction. To permit a party by "artful pleading" to "anticipate[ ] a defense based on federal law" and thus bring within federal jurisdiction a case that could not otherwise be heard in a federal court would "disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act." *Skelly Oil Co. v. Phillips Petroleum Co., supra*, 339 U.S. at 673–74, 70 S.Ct. at 879. *See Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127–29, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974) (per cu-

riam); *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248–49, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952); *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112, 116–19, 57 S.Ct. 96, 97, 99–100, 81 L.Ed. 70 (1936); 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, *supra*, § 3562, at 413, § 3566, at 434–38; 10 *id.* § 2767, at 847–49; 1 Moore's Federal Practice ¶ 0.62[2.–2], at 659–60 (2d ed. 1982). A claim does not arise under federal law within the meaning of section 1331 where it relies on federal law only to establish an immunity or defense which would preclude the declaratory judgment defendant from successfully litigating against the declaratory judgment plaintiff a claim arising under state law.

■ The manufacturers' arguments to the contrary are without merit. That anticipated federal defenses do not suffice to establish federal question jurisdiction is a principle too well-established in this circuit to merit discussion. *See, e.g., Arizona v. Atchison, Topeka & Santa Fe R. Co.*, 656 F.2d 398, 401 (9th Cir. 1981); *Guinasso v. Pacific First Fed. Savings & Loan Ass'n*, 656 F.2d 1364, 1366 (9th Cir. 1981); *United Air Lines, Inc. v. Division of Indus. Safety*, 633 F.2d 814, 816–17 (9th Cir. 1980); *Rath Packing Co. v. Becker, supra*, 530 F.2d at 1306 (no jurisdiction under former section 1331(a) where declaratory judgment plaintiff "is seeking an adjudication of a claim which is essentially meaningful only when pleaded as a defense to the particular pending state court actions").[11]

### III

The district court's grant of summary judgment for Esprit is affirmed. If the manufacturers seek to raise the *Illinois Brick* preemption issue, they may properly

---

11. The present controversy was "created by ... the state court action" against the manufacturers and did not arise independently thereof. *Rath Packing Co. v. Becker, supra*, 530 F.2d at 1305. There is no "actual conflict" in this case between the substantive requirements imposed by state and federal antitrust law. *See Conference of Federal Savings & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1259 (9th Cir. 1979), *aff'd mem.*, 445 U.S. 921, 100 S.Ct. 1304,

63 L.Ed.2d 754 (1980). Both the Sherman Act and the Cartwright Act proscribe price fixing— the standard for lawful competitive conduct is identical under both state and federal law. Therefore, insofar as *Rath Packing* or *Conference of Federal Savings* may create an exception to the rule that anticipated federal defenses do not create federal question jurisdiction, it is not applicable here.

do so as a defense in Esprit's Cartwright Act action now remanded to the state courts. Appellate review may then be had on direct appeal to the state appellate courts and ultimately to the United States Supreme Court.

AFFIRMED.